

18-015793-CD   FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   12/13/2018 11:13 AM   Carlita McMiller

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ARTHUR MULLINS,

    Plaintiffs,

v

FORD MOTOR COMPANY;
and BRIAN BUTCHER, an individual,

    Defendants.

Case No.: 18-_____-CD
Hon. _____

---

JAMES B. RASOR  (P43476)
ANDREW J. LAURILA  (P78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

---

### PLAINTIFFS' COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

                               /s/ *James B. Rasor*
                               **James B. Rasor (P43476)**

NOW COMES PLAINTIFF, ARTHUR MULLINS, by and through his attorneys, Rasor Law Firm, PLLC, and for his Complaint against Defendants, states as follows:

## GENERAL ALLEGATIONS

### Parties

1. At all relevant times, Plaintiff Arthur Mullins was a resident of the City of Detroit, County of Wayne, State of Michigan.

2. Defendant Ford Motor Company (hereinafter "FMC"), is a foreign corporation that conducts business in the County of Wayne and has its principal place of business in the City of Dearborn, County of Wayne, State of Michigan.

3. Upon information and belief, Defendant Brian Butcher is a resident of Wayne County, State of Michigan, and is an agent of Defendant FMC.

4. At all material times, Plaintiff Mullins was an employee of Defendant FMC.

5. This lawsuit arises out of events occurring within the City of Dearborn, County of Wayne, and State of Michigan.

6. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Elliott-Larsen Civil Rights Act ("ELCRA"), and the Family Medical Leave Act ("FMLA").

7. Defendant FMC is an "employer" within the meaning of the PWDCRA, MCL §37.1201(b), the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2201(a), and the FMLA, 29 USC §2611(4)(A)(i).

8. Defendant Brian Butcher is an "employer" within the meaning of the PWDCRA and ELCRA as an "agent" of Defendant DTC,pursuant to MCL §37.1201(b); M.C.L. §

37.2103(g); M.C.L. § 37.2201(a) and is an "employer" within the meaning the FMLA, 29 USC §2611(4)(A)(i).

9. The amount in controversy exceeds $25,000, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper within this jurisdiction of the Wayne County Circuit Court.

### Administrative Procedures

10. Plaintiff filed a charge of discrimination with the EEOC based on retaliation on February 14, 2018.

11. Plaintiff filed a second charge of discrimination with the EEOC and concurrently Michigan Department of Civil Rights based on retaliation and disability discrimination on February 20, 2018.

12. Plaintiff has dismissed the federal claims relating to these charges of discrimination and subsequent right to sue letters.

### COMMON FACTUAL ALLEGATIONS

13. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one through 12 of the General Allegations, as if fully set forth herein, paragraph by paragraph, word for word.

14. Plaintiff began working as a Hi-Lo Driver for Defendant FMC in 2015 at FMC's Dearborn Stamping Plant.

15. On or around April 2017, Plaintiff filed a complaint with management regarding a coworker, Crystal Perry, because she was spreading sexually charged, yet false, rumors regarding Plaintiff and another employee within the plant.

3

16. Plaintiff reported this malicious conduct, and ensuing hostile work environment, to Defendant FMC's labor relations, which included allegations pertaining to Defendant FMC's management at the plant.

17. Despite Plaintiff's complaint, Perry remained working in close proximity to Plaintiff.

18. Soon thereafter, Plaintiff was taken off his Hi-Lo position and placed in a less favorable position, which affected both his ability to work overtime and his end-of-year bonus.

19. Due to these continuing events and Defendant's failure to remedy the circumstances, Plaintiff called Defendant FMC's harassment hotline in or around May of 2017 about both the continuing nature of Perry's harassment and about his position being changed.

20. Plaintiff, who it was known to Defendant suffers from depression, took medical leave (pursuant to FMLA) based on the workplace stress on or around May 9, 2017.

21. Plaintiff returned from stress leave on or around September 17, 2017.

22. Upon Plaintiff's return, he was immediately placed in a position near Perry, which permitted the hostility to continue.

23. Plaintiff again asked Labor Relations to move him away from Perry—a reasonable request given the massive size of FMC's plant—yet it was to no avail.

24. As Perry continued her hostile behavior towards Plaintiff, he took medical leave again based on stress beginning approximately that same week, which included submitting paperwork to Defendant FMC from his physician identifying "major depression" as the root of the leave.

25. Plaintiff returned from medical leave for the second time on or around January 25, 2018.

26. Despite his repeated request to be moved and/or placed away from Perry, upon his return he was placed even closer to her work-wise.

27. Plaintiff went to Labor Relations during the week of January 25, 2018, specifically to Defendant Butcher, a labor relations representative who had involvement before with Plaintiff's complaints, and requested he be moved away from Perry.

28. Around that same time, Butcher came down to the plant's floor and informed Plaintiff they would move him to the other side of the facility, more than a mile away.

29. However, Defendants only moved Plaintiff for one day; the following day, he was again positioned near Perry.

30. Because he again had moved back near Perry, and she continued to create a hostile work environment, Plaintiff met with Butcher on or around February 2, 2018, wherein he reported his concerns with being placed near Perry and Defendant's failure to rectify the situation.

31. During this conversation with Defendant Butcher, where Plaintiff only desired to make a formal complaint in writing, Butcher repeatedly requested Plaintiff to sign a statement that was neither true nor in Plaintiff's words, even going so far as threatening Plaintiff with discipline if he did not sign it.

32. Because Plaintiff believed the statement to be false he refused to sign it.

33. As Plaintiff refused to sign, Defendant Butcher began yelling and accusing Plaintiff of telling him, "fuck you bitch;" something Plaintiff did not say.

34. Plaintiff was suspended without pay for two weeks at the direction of Defendant Butcher for making threats and "inappropriate behavior."

5

35. Plaintiff filed his initial charge of discrimination on February 14, 2018, wherein he identified the harassing behavior from Perry, that labor relations had failed to rectify his hostile situation, and that a "Labor Relations Manager" (i.e. Butcher) improperly suspended him.

36. When Plaintiff's suspension was scheduled to end on February 16, 2018, Defendant Butcher ordered Plaintiff to undergo a "fit for duty" exam.

37. When Plaintiff arrived at this fit for duty exam, the nurse at Defendant FMC's facility requested him to sign a document permitting Defendant FMC to conduct a psychiatric evaluation; yet there was no reason provided for such a unique examination.

38. While still suspended, Plaintiff received a letter from Defendant FMC Labor Relations, instructing him to complete an Independent Medical Evaluation, which entailed a psychiatric evaluation.

39. On approximately March 13, 2018, Plaintiff completed the psychiatric evaluation, to which he was informed from his union representative that he passed; but no representative of Defendant FMC and/or Labor Relations notified or contacted him concerning the results.

40. Because Plaintiff was never notified and/or informed of his test result, his suspension effectively continued.

41. Plaintiff received a letter in June 2018 informing him that his "return to work" date would be on May 15, 2018.

42. When Plaintiff called Defendant FMC upon receipt of this letter, he was informed that his effective termination instead occurred on May 12, 2018.

**COUNT I – HOSTILE WORK ENVIRONMENT
SEXUAL HARASSMENT – VIOLATION OF
THE ELLIOTT-LARSEN CIVIL RIGHTS ACT,
M.C.L. § 37.2101 *et seq*. AS TO ALL DEFENDANTS**

43. Plaintiff hereby reasserts and re-alleges each and every allegation contained in paragraphs 1 through 42, as if fully set forth herein.

44. The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* prohibits discrimination against any individual with respect to employment, compensation, or a term, condition, or privilege of employment because of sex.

45. The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2103(i) permits a claim that "Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" where "[t]he conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment."

46. At all material times, Plaintiff was an employee of Defendants, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

47. Plaintiff is a male and a member of a protected class under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

48. As employers within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendants owed Plaintiff a duty not to discriminate against and/or harass him and/or permit harassment with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of sex.

49. The comments and conduct Plaintiff suffered from his coworker, Krystal Perry, was explicitly sexual in nature, involved Plaintiff's sexual relationship with a different coworker, and was repeatedly reported by Plaintiff to Defendants, albeit unavailingly.

50. Defendants by their agents, representatives, and/or employees, were predisposed to permit discrimination and harassment on the basis of Plaintiff's sex and acted in accordance with that predisposition.

51. While employed by Defendants, Plaintiff was constantly and repeatedly subjected to conduct sexual in nature from his coworker, Crystal Perry, and this harassment was ratified by and through Defendants, their agents, servants and/or employees, and said acts being made unlawful by the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

52. Defendants, by and through their agents, servants and/or employees intentionally violated the ELCRA by the following acts:

   a. Discriminating against Plaintiff with respect to employment, compensation, or a term, condition or privilege of employment, because of sex;
   b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff's employment because of sex;
   c. Segregating, classifying or otherwise discriminating against Plaintiff on the basis of his sex with respect to a term, condition or privilege of employment;
   d. Creating and permitting an unbearable work environment based on threats, offensive comments that were sexual in nature, and outrageous conduct on the basis of Plaintiff's sex;
   e. Failing to provide a work environment free from discriminatory/harassing conduct of a sexual nature;
   f. Failing to take remedial actions upon notice of the harassing treatment.

53. The disparate, harassing and less favorable treatment to which Plaintiff experienced and reported to Defendants while employed came both from his coworker, Crystal Perry, management and supervisory personnel.

54. Plaintiff was subjected to harassing treatment in whole or in part because of his sex, and such treatment was sufficiently severe and pervasive such that Plaintiff was subjected to a hostile work environment that was sexual in nature on the basis of Plaintiff's sex.

55. Due to the harassing and continuous nature of Plaintiff's harasser's conduct, he was unable to perform his job duties because of the always present abusive, hostile environment, fear of retaliation, further harassing conduct from Perry, and Defendants' failure to remedy the situation.

56. The harassment also negatively affected Plaintiff so much so he was unable to perform his job in that Plaintiff on multiple instances took FMLA leave based on stress and depression.

57. Plaintiff felt uncomfortable, fearful, and physically and emotionally violated by Perry's offensive, threatening conduct of sexual nature towards him.

58. Defendants have a policy or pattern of practice that encourages management or supervisory personnel to fail to take prompt and corrective action upon notice of harassing conduct and/or that tolerates the disparate, harassing, less favorable treatment of harassed employees by other employees.

59. Defendants have a policy or pattern of practice that encourages management or supervisory personnel to look the other-way or actively encourage disparate, harassing and less favorable treatment of protected employees.

60. Defendants tolerated and looked the other-way to disparate, harassing, less favorable treatment of Plaintiff by Plaintiff's coworker, Crystal Perry, and supervisory personnel Plaintiff reported this conduct to.

9

61. Defendants had no legitimate business reason for their actions, in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, which specifically prohibits discrimination/harassment against any person regarding employment and/or the terms of employment on the basis of sex.

62. Defendants and their agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

63. By failing to take prompt and effective remedial actions but instead forcing Plaintiff to remain in close proximity with the same discriminator/harasser and permitting Perry to continue to harass Plaintiff, Defendants have in effect condoned, ratified, and/or authorized harassment against Plaintiff.

64. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein, which constitute a hostile work environment, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

65. Pursuant to the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. The conduct of Defendant was and remains extreme and outrageous subjecting Defendants to excess damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendants in an amount in excess of $25,000.00, together with interest, costs, and reasonable

attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

### COUNT II – RETALIATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et seq.* AS TO ALL DEFENDANTS

66. Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 65 above, as though fully set forth herein.

67. The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act.

68. At all material times, Plaintiff is and has been an employee of Defendants covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

69. As employers within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendants owed Plaintiff a duty not to retaliate against him with respect to his employment, promotional opportunities, compensation, post-termination rights, or other conditions or privileges of employment on the basis of reporting harassment and discrimination.

70. Complaining about, reporting, and/or opposing gender discriminatory harassment and treatment, or gender discriminatory policies or patterns of practice is a statutorily protected activity under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

71. Plaintiff engaged in conduct protected under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, including, but not limited to, complaining of, reporting, and/or opposing the discriminatory and harassing conduct of the agents, servants, and/or employees of Defendants.

72. The first time Plaintiff complained of and/or opposed harassing conduct by his coworker was on or around April of 2017.

73. The last time that Plaintiff complained of and/or opposed harassing conduct by his coworker was on or around February 2, 2018.

74. Defendants had knowledge of Plaintiff's complaints and protected activities as set forth in the preceding paragraphs.

75. Defendants by and through their agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant, isolating Plaintiff, and/or making or permitting Plaintiff's work environment to remain unbearable culminating in various medical absences and his termination.

76. Plaintiff was subjected to continual harassment and other retaliatory acts by Defendants and their agents, servants and/or employees in retaliation for his opposition to civil rights violations and having complained about the harassment described herein, in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

77. Defendants and their agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

78. As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendants in an amount in excess of $25,000.00, together with interest, costs, and reasonable attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

### COUNT III
### VIOLATION OF M.C.L. § 37.1101, *et seq.*, THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — DISCRIMINATION AS TO ALL DEFENDANTS'

79. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 78, as if fully set forth herein.

80. The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.*, ("PWDCRA") prohibits the discharge or otherwise discrimination against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

81. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the PWDCRA. Specifically, Plaintiff suffers from depression, which substantially limits one or more of his major life activities, Defendants have a record of the impairment, and/or Defendants regarded Plaintiff as having such an impairment.

82. Plaintiff's depression limited, and/or were regarded as limiting, the substantial major life activities of thinking, concentrating, decision-making, sleeping, caring for himself, and working.

83. Plaintiff is qualified for the position and could perform the essential job duties of his position with Defendant FMC with or without a reasonable accommodation.

84. Plaintiff's disability was unrelated to Plaintiff's ability to perform his duties and essential functions.

85. Defendants' ordered Plaintiff to undergo a psychiatric IME, which under information and belief arose from Defendants' discriminatory perceptions and/or beliefs regarding Plaintiff's depression and/or mental state.

86. Defendants violated the PWDCRA when they discriminated against Plaintiff based on his disability by failing to accommodate his reasonable requests for an accommodation and terminating Plaintiff's employment for the same.

87. Defendants treated Plaintiff, because of his disability, more harshly than it treated other similarly-situated employees for the same conduct.

88. Plaintiff is under the information and belief that Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated employees, in the terms and conditions of his employment, based upon the unlawful, stereotypical, generalized consideration of Plaintiff's disability.

89. Defendants' actions were intentional and in disregard of Plaintiff's rights and sensibilities.

90. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

91. Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the PWDCRA.

92. As a direct and proximate result of Defendants' unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity,

loss of career and employment opportunities, loss of employee benefits, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

93. Pursuant to the PWDCRA, Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

### COUNT IV – RETALIATION – VIOLATION OF THE PERSON WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. § 37.1101 *et seq.* AS TO ALL DEFENDANTS

94. Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 93 above, as though fully set forth herein.

95. The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1602(a) ("PWDCRA") prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act.

96. At all material times, Plaintiff is and has been an employee of Defendants covered by and within the meaning of the PWDCRA.

97. As employers within the meaning of the PWDCRA, Defendants owed Plaintiff a duty not to retaliate against Plaintiff with respect to his employment, promotional opportunities, compensation, post-termination rights, or other conditions or privileges of employment on the basis of reporting harassment and discrimination.

15

98. Filing a charge of discrimination is protected activity for purposes of the PWDCRA.

99. Plaintiff engaged in conduct protected under the PWDCRA when he filed a charge of disability discrimination with the EEOC and concurrently with the Michigan Department of Civil Rights citing "disability" on February 20, 2018.

100. Defendants had knowledge of Plaintiff's complaints and protected activities as set forth in the preceding paragraphs.

101. Defendants by and through their agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant, isolating Plaintiff, and/or terminating him.

102. Plaintiff was subjected to retaliatory acts by Defendants and their agents, servants and/or employees in retaliation for his filing a charge of discrimination.

103. Defendants and their agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

104. As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff Arthur Mullins respectfully requests that this Court enter a judgment against Defendants in an amount in excess of $25,000.00, together with interest, costs,

18-015793-CD FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 12/13/2018 11:13 AM Carlita McMiller

and reasonable attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

## COUNT V – FMLA DISCRIMINATION
## 29 U.S.C. § 2601, *et seq*. AS TO ALL DEFENDANTS

105. Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 104 above, as though fully set forth herein.

106. Pursuant to 29 U.S.C. § 2615(a)(2), it is unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

107. Plaintiff requested and was granted FMLA on a series of occasions making him a person entitled to protection and an eligible employee under the FMLA.

108. Taking FMLA leave is a protected activity under the FMLA's discrimination prong and Defendants were aware of Plaintiff's intermittent FMLA.

109. Plaintiff's repeated FMLA leave during the course of his employment, specifically beginning with the hostile treatment he suffered and Defendant refused to rectify, arose out of his depression and ensuing stress from the hostile work environment.

110. Following Plaintiff's last FMLA request, which ended on approximately January 25, 2018, Plaintiff was thereafter subject to adverse employment actions, including but not limited to being required to undergo psychiatric evaluations and his termination.

111. There is a causal connection between Plaintiff's FMLA protected conduct and the adverse employment actions.

112. Defendants' stated reason for terminating Plaintiff was in fact a pretext for discrimination based on Plaintiff's FMLA leave.

113. Defendants attached negative consequences to Plaintiff's FMLA leave time by making him undergo psychiatric evaluations to return to work following his FMLA leave for depression: a psychological disorder. 29 CFR 825.220(c).

114. Defendants' conduct here in discriminatorily terminating Plaintiff was willful and done with reckless disregard of the law depriving Plaintiff of employment for utilizing his lawful protected FMLA leave.

115. As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and liquidated damages pursuant to 29 U.S.C. § 2617.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendants in an amount in excess of $75,000.00, together with interest, costs, and reasonable attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

Respectfully submitted,

/s/ James B. Rasor
James B. Rasor (P43476)
Attorney for Plaintiff
RASOR LAW FIRM, PLLC
201 East Fourth Street
Royal Oak, Michigan 48067
(248) 543-9000
jbr@rasorlawfirm.com

Date: December 13, 2018

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ARTHUR MULLINS,

    Plaintiffs,

v

FORD MOTOR COMPANY;
and BRIAN BUTCHER, an individual,

    Defendants.

Case No.: 18-    -CD
Hon. _____

---

JAMES B. RASOR (P43476)
ANDREW J. LAURILA (P78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI 48067
248/543-9000 // 248/543-9050 fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

---

## **DEMAND FOR JURY TRIAL**

**NOW COME** Plaintiff, by and through his attorneys, RASOR LAW FIRM, PLLC, and hereby respectfully requests trial by jury in the above captioned matter.

                                Respectfully submitted,

                                */s/ James B. Rasor*
                                James B. Rasor (P43476)
                                Attorney for Plaintiff
                                RASOR LAW FIRM, PLLC
                                201 East Fourth Street
                                Royal Oak, Michigan 48067
                                (248) 543-9000

Date: December 13, 2018               jbr@rasorlawfirm.com