UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR MULLINS,

     Plaintiff,

v.

FORD MOTOR COMPANY
and BRIAN BUTCHER, an individual,

     Defendants.

Case No. 19-cv-10372

Hon. Matthew F. Leitman

Magistrate Judge Anthony P. Patti

| | |
|---|---|
| James B. Rasor (P43476) | Elizabeth Hardy (P37426) |
| Andrew J. Laurila (P78880) | Thomas J. Davis (P78626) |
| RASOR LAW FIRM, PLLC | KIENBAUM HARDY VIVIANO |
| Attorneys for Plaintiff | PELTON & FORREST, P.L.C. |
| 201 E. Fourth St. | Attorneys for Defendants |
| Royal Oak, MI 48067 | 280 N. Old Woodward Ave., Ste. 400 |
| (248) 543-9000 | Birmingham, MI 48009 |
| jbr@rasorlawfirm.com | (248) 645-0000 |
| ajl@rasorlawfirm.com | ehardy@khvpf.com |
| | tdavis@khvpf.com |

**Defendants' Brief in Response to Plaintiff's Motion for Summary Judgment**

# Table of Contents

Controlling Authorities ........................................................................ iii

Introduction ...........................................................................................1

Background ............................................................................................2

    A.    Mullins's lies lead to conflict and medical leave. .......................2

    B.    Mullins returns, exhibits unusual behavior, and goes on
           leave again 11 days later...............................................................2

    C.    Mullins returns on January 26, 2018, and again acts
           unusually, triggering a February 1 decision to give him a
           mental exam...................................................................................3

    D.    Mullins is suspended after a February 2, 2018 incident............4

    E.    On February 9, 2018, Watson directs Butcher to complete an
           unusual behavior report and Mullins is told to take a fitness-
           for-duty examination. ...................................................................5

    F.    Mullins is found unfit for duty unless he is given an
           unreasonable accommodation, yet Ford tries to return him to
           work anyway.................................................................................6

    G.    Mullins fails to comply with the letter, remain absent
           without leave, and is terminated under Ford's AWOL
           policy. ..........................................................................................7

Standard of Review.................................................................................7

Argument.................................................................................................8

    I.    Mullins's temporary, co-worker induced mental health issue
        is not a "disability" under the PWDCRA.................................8

    II.    The fundamental premise of Mullins's motion—that the
        PWDCRA limits or prohibits mental-health examinations—
        is false. .......................................................................................10

III.    Mullins cannot show that his suspension or termination
        warrants summary judgment under the PWDCRA either.........................12

        A.      Mullins's two-week suspension is not properly before
                the Court, and there would be no evidence supporting
                judgment in his favor on the two-week suspension
                claim even if it were........................................................................13

        B.      Mullins is not entitled to judgment on the termination
                claim. ............................................................................................15

Conclusion .............................................................................................................18

## Controlling Authorities

**Cases**

*Arnett v. Myers*,
    281 F.3d 552 (6th Cir. 2002) ...................................................................7

*Bachman v. Swan Harbour Ass'n*,
    252 Mich. App. 400 (2002) ...................................................................12

*Burdett-Foster v. Blue Cross Blue Shield of Mich.*,
    574 F. App'x 672 (6th Cir. 2014) ............................................................9

*Chiles v. Mach. Shop, Inc.*,
    238 Mich. App. 462 (1999) ......................................................... 8, 9, 10

*Cuddington v. United Health Servs., Inc.*,
    298 Mich App 264 (2012) .....................................................................13

*Davis v. Echo Valley Condo. Ass'n*,
    945 F.3d 483 (6th Cir. 2019) ................................................................13

*Dillon-Barber v. Regents of Univ. of Mich.*,
    2005 WL 1335132 (Mich. Ct. App. June 7, 2005) .............................9, 11

*Edwards v. Department of Corrections*,
    2000 WL 33421589 (Apr. 28, 2000) ...................................................9, 10

*Estate of Jackson by Jackson v. 36th Dist. Court*,
    2019 WL 4180178 (Mich. Ct. App. Sept. 3, 2019) .................................8

*Hall v. McRea Corp.*,
    238 Mich. App. 361 (1999) ...................................................................13

*Harrison v. Olde Fin. Corp.*,
    225 Mich. App. 601 (1997) ...................................................................13

*Hart v. Goodrich Area Sch.*,
    2012 WL 1415128 (Mich. Ct. App. Apr. 24, 2012) ..............................12

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) ...............................................................................7

*Miller v. Michigan State Police*,
   2017 WL 3043972 (Mich. Ct. App. July 18, 2017) .............................................11

*Noe v. Department of Treasury*,
   2019 WL 452164 (Mich. Ct. App. Feb. 5, 2019) .................................................17

*Payment v. Department of Transportation*,
   2017 WL 3441453 (Mich. Ct. App. Aug. 10, 2017 ..................................... 10, 11

*Peltier v. United States*,
   388 F.3d 984 (6th Cir. 2004) ...............................................................................12

*Rosteutcher v. MidMichigan Physicians Group*,
   332 F. Supp. 2d 1049, 1059 (E.D. Mich. 2004) ..................................................10

*Sargent v. Int'l Bhd. of Teamsters,*
   713 F. Supp. 999 (E.D. Mich. 1989) ...................................................................14

*Sharp v. Aker Plant Servs. Grp., Inc.*,
   726 F.3d 789 (6th Cir. 2013) ...............................................................................14

*Sniecinski v. Blue Cross & Blue Shield*,
   469 Mich. 124 (2003) ...........................................................................................13

*Sullivan v. River Valley Sch. Dist.*,
   197 F.3d 804 (6th Cir. 1999) ...............................................................................11

*Thompson v. Olympic Stain Co.*,
   841 F.2d 1127 (6th Cir. 1988) .............................................................................14

**Statutes**

MCL 37.1103(d)(i)(A) ..............................................................................................8

MCL 37.1202(e)......................................................................................................11

## Introduction

Arthur Mullins, an hourly worker at Ford's Dearborn Stamping Plant, engaged in strange, alarming behavior. It is well-documented that, from September 2017 to February 2018—during the few days when he was not out on leave—Mullins was repeatedly in Labor Relations, claiming that he was being "stalked" and "threatened" by the presence of three hourly women co-workers in their assigned workplaces. He displayed confusion over his job assignments, and would not work where assigned. In meetings with Labor Relations, he would refuse to answer questions, cry, and otherwise act abnormally. By February 1, 2018, Maria Watson at Ford's Labor Relations decided to send Mullins for a mental-health fitness-for-duty test. Mullins took the test, and when Ford gave him instructions to return to work with medical clearance or open a new medical leave, Mullins refused despite having been warned that he could not remain absent from work without leave. He was terminated under Ford policy after remaining absent without leave.

Ford's summary judgment brief explained why Mullins's claims of PWDCRA discrimination and retaliation arising out of his fitness-for-duty test and termination fail as a matter of law. But rather than argue why a jury should nonetheless hear his claims, Mullins has filed a motion seeking summary judgment *in his favor*, without even addressing—let alone coming close to meeting—the exceedingly high burden that a plaintiff seeking summary judgment must meet. His motion should be denied.

-1-

**Background**

Ford incorporates by reference the relevant facts set forth in its own summary judgment brief, ECF No. 26, PageID.198-210, but summarizes those facts here.

**A.  Mullins's lies lead to conflict and medical leave.**  Mullins worked at Ford with his girlfriend Shalisa Lee—but sought to conceal their relationship by falsely telling co-workers that Lee was his cousin. *Id.*, PageID.198. Co-worker Krystal Pierrie figured out the truth, and allegedly told others that Mullins and Lee were sleeping together. *Id.* This led to an April 2017 altercation on the plant floor, with Mullins reportedly threatening to "kick [Pierre's] ass." *Id.*, PageID.199.

In May 2017, Mullins was disqualified from his hi-lo after several unrelated writeups, and came to believe that his disqualification was designed to punish him for complaining about Pierrie. *Id.*, PageID.199-200. He took medical leave in May 2017 citing "depression" over these issues. ECF No. 26, PageID.200. He had never had depression before, and claimed that this newly-onset depression was "off and on." *Id.* Each time he would return to work, he had a "clean bill of health." *Id.*

**B.  Mullins returns, exhibits unusual behavior, and goes on leave again 11 days later.**  Mullins returned from leave, without disability, on September 5, 2017. On September 8, 2017, he went to Maria Watson in Labor Relations to complain about not being assigned to the hi-lo. *Id.* He kept claiming he had never had a hearing over his disqualification; then, after Watson repeatedly corrected him,

Mullins said he had not had a hearing *there*, in Watson's office. *Id.*, PageID.200-201. Watson was alarmed by his behavior, and memorialized the interaction. *Id.*

On September 15, 2017, Mullins told Labor Relations that Pierrie had followed him into the plant, and that—although she did not say anything or touch him—she was threatening him, causing him to break into a run to escape. *Id.*, PageID.201. He then called Ford's harassment hotline to complain about Pierre, Watson, and others. *Id.* Then, an hour after a crying Pierrie told Labor Relations she wanted Mullins's harassment to stop, Mullins's girlfriend Lee intentionally rammed her hi-lo into Pierrie's hi-lo. *Id.* The next day, November 16, Mullins went on leave again—a mere 11 days after returning from his first leave. *Id.*, PageID.202.

**C. Mullins returns on January 26, 2018, and again acts unusually, triggering a February 1 decision to give him a mental exam.** Mullins returned to work on January 26, 2018. *Id.* Almost immediately after arriving, he saw a friend of Pierrie's near his workstation and went to Labor Relations to complain. *Id.* He demanded that Bryan Butcher move his workstation. *Id.* Butcher had no authority to move Mullins, but Mullins's floor supervisor Daryl Rinehart allowed him to work in a different area for one day. *Id.*, PageID.203. The same day, Mullins met with Larissa Kujan and Michelle Pasquali to discuss his May 2017 hotline call. *Id.* He was unable to focus and kept diverting from Pasquali's questions, demanding to talk only to the "highest levels" of Labor Relations and the UAW. *Id.* He referred to

filing police reports, alleged Watson was corrupt, and stated that he would "gather evidence" and "prove everything." *Id.* His conduct alarmed Kujan. *Id.*

On January 27, 2018, Rinehart reported that Mullins was not working, and was "constantly stating he is in fear of his life" and alleging he was being threatened. *Id.* Mullins ultimately went to medical that day, and left the plant early. *Id.*

Mullins's next day at work was February 1, 2018. He again met with Pasquali and Kujan. *Id.*, PageID.204. He wore dark sunglasses and appeared agitated and upset, with tears running down his cheeks. *Id.* He claimed he was being "harassed" and 'retaliated against" by fifteen different people, including Pierrie. *Id.* He continually went off track and avoided answering questions, before abruptly stopping the interview after discussing Pierrie. *Id. Id.* Kujan memorialized this abnormal behavior, and she and Pasquali reported their concerns to Watson. *Id.*

On the evening of February 1, 2018, Watson emailed Ford's executive physician regarding her team's concern for Mullins's mental stability and well-being. *Id.* She decided to have an Unusual Behavior Report completed for Mullins, and to send him for a mental-health fitness for duty examination as early as the next morning. *Id.*, PageID.204-205.

**D. Mullins is suspended after a February 2, 2018 incident.** Shortly after arriving at work on February 2, 2018, Mullins saw Pierrie again (in her assigned workplace) and went to Labor Relations to complain, along with UAW

-4-

representative Dan Queen. *Id.*, PageID.205. Mullins secretly recorded the meeting. *Id.* At the meeting, Mullins repeatedly refused to answer Butcher's questions as to the misconduct Pierrie had allegedly committed "today," and instead demanded to discuss prior events occurring "to date." *Id.* Butcher found Mullins's demeanor was angry, erratic, and upset, and—as the audio reflects, Butcher told Mullins he felt threatened by the behavior. *Id.* Near the end of the interview, Queen left the room. *Id.*, PageID.206. At that point, Mullins lightly mouthed the words "Fuck you, bitch." *Id.* & n.2. Mullins said it in a way that would not be audible on his secret recording. *Id.* Once Queen returned, Butcher suspended Mullins. *Id.*, PageID.206. Mullins stood up, took an aggressive pose, and stepped towards Butcher, who called out to Queen to get his attention. *Id.* Mullins was given a two-week suspension. *Id.*

**E.   On February 9, 2018, Watson directs Butcher to complete an unusual behavior report and Mullins is told to take a fitness-for-duty examination.**   On February 7, 2018, Ford's executive physician asked Watson for an update on Mullins. *Id.* Watson responded that the unusual behavior report would be completed on Friday, February 9. *Id.* She had Butcher draft the report, which cited Mullins's illogical, paranoid, and erratic conduct with Labor Relations and floor management starting in September 2017. *Id.;* ECF No. 26-7, PageID.419-20; ECF No. 26-5, PageID.325 ¶ 19. Mullins was told that he had to take the fit-for-duty exam and clear through medical before returning to work. ECF No. 26, PageID.206-07.

**F. Mullins is found unfit for duty unless he is given an unreasonable accommodation, yet Ford tries to return him to work anyway.**  Mullins took the fit-for-duty exam on March 13, 2018. *Id.*, Page ID 207. The examiner reported that Mullins had an "unspecified mental health condition" and had "situational anxiety" around certain employees. *Id.* She said Mullins would be fit for duty "as long as" his workstation were moved. *Id.* Watson, however, could not follow this suggestion; among other things, (1) Pierrie's job was to drive a hi-lo and could be assigned to work anywhere in the plant, meaning that her work duties might take her near Mullins at any time, as could her use of any common facility, like the parking lot or shuttling busses; (2) permanently reassigning Mullins would likely not be possible without violating the Ford-UAW collective bargaining agreement; and (3) because Pierrie had not been found to have done anything wrong, restricting her duties or ability to use common facilities in the plant would likely be improper punishment or otherwise violate the CBA itself. *Id.*, PageID 207-08.

Ford decided to let Mullins's own doctor address whether Mullins could return to work. *Id.* Ford obtained Mullins's permission to speak to his psychiatrist; however, the psychiatrist had not seen Mullins since January and could not answer Ford's questions. *Id.* Labor Relations then sent Mullins a notice, dated May 8, 2018, stating that he could return to work if (1) his own doctor provided a letter stating that he could work without restrictions; (2) provided his doctor's letter stating that he

-6-

could work with restrictions; or (3) if he could not return, that he could open a medical leave. *Id.*, PageID.209. He was also told that he needed to comply with the letter, or face termination under Ford policy for being AWOL. *Id.*

**G.  Mullins fails to comply with the letter, remain absent without leave, and is terminated under Ford's AWOL policy.**  Mullins admitted that he received this letter at the end of May 2018. *Id.* He waited until June 2018 to approach Maria Watson about the letter, and Watson gave him additional time to comply with its terms. *Id.* But Mullins did nothing. Although he claims that that his mental-health condition left him unable to work in June 2018, he did not open a medical leave (as he had done multiple times before). *Id.* He remained absent without leave and was terminated as a consequence of Ford's AWOL policy effective June 12, 2018. *Id.*

## Standard of Review

Mullins incorrectly identifies the standard of review, relying on cases where the moving party is the defendant. When the moving party has the burden of proof (and here, that is Mullins) he "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Granting a plaintiff's motion for summary judgment "is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Argument

Mullins's summary judgment motion rests entirely on his claim of PWDCRA discrimination, with no mention of PWDCRA accommodation or retaliation. For the many reasons outlined in Ford's summary judgment brief, Mullins has no viable PWDCRA claim. But even if he did, he certainly does not have a claim so powerful that it warrants summary judgment in his favor.

## I. Mullins's temporary, co-worker induced mental health issue is not a "disability" under the PWDCRA.

Mullins's claim fails at the outset because he was not "disabled" as defined by the PWDCRA. ECF No. 26, PageID.210-212. If a person is not disabled under the statute, "there is no need to consider whether a defendant discriminated against the plaintiff based on his or her disability." *Estate of Jackson by Jackson v. 36th Dist. Court*, 2019 WL 4180178, at *3 (Mich. Ct. App. Sept. 3, 2019). To summarize this argument, raised in Defendants' own opening brief:

*First*, the PWDCRA does not cover temporary disabilities lasting less than two years, because those are not considered "substantial" limitations as defined by MCL 37.1103(d)(i)(A). *See Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 479 (1999) ("a disability normally does not include temporary medical conditions, even if those conditions require extended leaves from work," and observing that it had previously recognized impairments of two years or less as temporary); *cf. Dillon-Barber v. Regents of Univ. of Mich.*, 2005 WL 1335132, at *3 (Mich. Ct. App. June

-8-

7, 2005) ("Courts have consistently held that temporary psychological impairments, such as Plaintiff's depression, do not constitute ADA-cognizable disabilities").

Moreover, under the PWDCRA, an "alleged disability" must "interfere substantially with an individual's ability to 'work' generally, or to work at all, not merely to work in a specific position of employment." *Chiles*, 238 Mich. App. at 483. "Personality conflicts, workplace stress, and being unable to work with a particular person or persons do not rise to the level of a 'disability' or inability to work…." *Burdett-Foster v. BCBS of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014). Thus, in *Edwards v. Department of Corrections*, the Michigan Court of Appeals rejected the PWDCRA claim of a prison guard who refused to guard female inmates who had accused him of sexual misconduct, which caused him "situational anxiety." 2000 WL 33421589, at *1-4 (Apr. 28, 2000). Citing *Chiles*, the Court recognized that even if his situational anxiety were a disability, the disability did not limit him from a wide range of jobs. For although he could not supervise those inmates, "he was still capable of performing his duties as a prison guard elsewhere." *Id.* at *4.

Under this authority, the limitations of Mullins's alleged disability were not "substantial" under the PWDCRA. For one thing, it lasted less than two years: His depression arose in April 2017; it was off-and-on thereafter; and Mullins left Ford in June 2018, only 14 months after his first episode. ECF No. 26, PageID.211. For another, his "disability" did not preclude him from working a wide range of jobs;

-9-

just as in *Edwards*, he admitted he could do his job so long as he did not have to work in the vicinity of the women who were allegedly causing him anxiety. *Id.*, PageID.212. Mullins was not substantially limited under the PWDCRA.

Mullins, in his brief, makes a perfunctory argument that depression is an impairment, and that he is disabled merely because he "suffers from major depression and anxiety." ECF No. 27, PageID.467-68. But none of the cases he cites provides that the "substantial limitation" requirements cited above do not apply to a disability of depression and anxiety. Indeed, both his cases indicate otherwise. In *Payment v. Department of Transportation*, the court stated that while "depression and anxiety *can* cause one to be" disabled, "a diagnosis does not categorically translate to a disability under the PWDCRA." 2017 WL 3441453, at *2 (Mich. Ct. App. Aug. 10, 2017) (citing *Chiles, supra*, at 474) (emphasis in original). And in *Rosteutcher v. MidMichigan Physicians Group*, Judge Lawson recognized that depression had to be "substantially limiting" to state a claim. 332 F. Supp. 2d 1049, 1059 (E.D. Mich. 2004). Because Mullins's alleged disability is not "substantially limiting" under the PWDCRA, he cannot prevail, and the Court can stop there.

## II. The fundamental premise of Mullins's motion—that the PWDCRA limits or prohibits mental-health examinations—is false.

At bottom, Mullins's argument for PWDCRA disability discrimination is simplistic. He posits that because the unusual behavior that led to his mental-health exam were "characteristics of [his] known disability," the exam itself reflected

-10-

discrimination. ECF No. 27, PageID.470-71; *accord* Complaint, ECF No. 1-2, PageID.22 ¶ 85 (claiming the examination was adverse action). But this is simply not the law; the PWDCRA "regulates neither when . . . mental examinations may occur, nor the scope of any examination conducted. It only regulates what an employer may do on the basis of such examinations." *Dillon-Barber v. Regents of Univ. of Mich.*, 2005 WL 1335132, at *11 (Mich. Ct. App. June 7, 2005). Thus, there is no PWDCRA violation unless an employer takes "discriminatory action against an individual on the basis of… mental examinations that are not directly related to the requirements of the specific job.'" *Id.* (quoting MCL 37.1202(e)); *cf. Payment*, 2017 WL 3441453, at *3 (holding that even a "more rigorous physical examination" than normal is not "conduct prohibited by MCL 37.1202").

As a result, courts routinely hold that employers may use mental-health exams to determine fitness for duty without fear of liability. *See Dillon-Barber*, 2005 WL 1335132, at *13 (rejecting argument that PWDCRA was violated when the plaintiff's employer "required an examination, that it was unnecessary in her view, and that its scope was too broad."); *see also, e.g.*, *Miller v. Mich. State Police*, 2017 WL 3043972, at *5 (Mich. Ct. App. July 18, 2017) (permitting job-related mental-health examination); *cf. Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999) ("Given that an employer needs to be able to determine the cause of an employee's aberrant behavior, this is not enough to suggest that the employee is

-11-

regarded as mentally disabled."). Here, Maria Watson, Michelle Pasquali, Larissa Kujan, Daryl Rinehart, *and* Bryan Butcher had all observed Mullins's unusual behaviors dating to September 2017—with Mullins frequently avoiding even when he wasn't out on medical leave. *Supra* at 2-4. And Mullins *concedes* they had good reason to believe he acted unusually: he was paranoid, he had difficulty thinking and processing information, and he continually was in Labor Relations due to his "feeling" that he was being harassed by numerous people, despite that not being true. ECF No. 27, PageID.454-56, ¶¶ 4-5, 8-10; *accord id.* at Page.ID 470-71.

Given that there was undisputedly a job-related reason for the examination, Mullins's claim that he is entitled to summary judgment merely because he was sent for a mental-health fitness-for-duty examination borders on frivolous.[1]

### III. Mullins cannot show that his suspension or termination warrants summary judgment under the PWDCRA either.

PWDCRA discrimination may be established by direct or circumstantial evidence. *Bachman v. Swan Harbour Ass'n*, 252 Mich. App. 400, 434 (2002). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful

---

[1]Were that not enough, Mullins admits that he was paid in full for the short time he was out awaiting resolution of the fit-for-duty exam. ECF No. 26-3, PageID.282, Pl's Dep. 452-53. That, too, forecloses any claim of "adverse action" from the examination, because paid time off the job is not adverse as a matter of law. *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (paid suspension not an adverse employment action); *cf. Hart v. Goodrich Area Sch.*, 2012 WL 1415128, at *5 (Mich. Ct. App. Apr. 24, 2012) (no adverse action over paid suspension).

discrimination was at least a motivating factor in the employer's actions." *Sniecinski v. Blue Cross & Blue Shield*, 469 Mich. 124, 13 (2003). Essentially, the decision-maker must "openly admit" to discrimination; thus, it is "rare" that direct evidence exists. *Cuddington v. United Health Servs., Inc.*, 298 Mich. App. 264, 276 (2012). Even then, this showing only "get[s] the plaintiff's case to the jury" with respect to that adverse action. *Harrison v. Olde Fin. Corp.*, 225 Mich. App. 601, 610 (1997). Absent direct evidence, a PWDCRA plaintiff must follow the *McDonnell Douglas* burden-shifting analysis. *Hall v. McRea Corp.*, 238 Mich. App. 361, 371 (1999).

> **A.    Mullins's two-week suspension is not properly before the Court, and there would be no evidence supporting judgment in his favor on the two-week suspension claim even if it were.**

Mullins's brief claims that his two-week suspension resulting from the February 2, 2018 incident in Labor Relations was disability discrimination. He should not be permitted to raise this claim at all—he did not assert that the suspension was disability discrimination in his Complaint or in his testimony.[2] But he certainly is not entitled to *summary judgment* on his two-week suspension claim.

---

[2] A party may not raise new legal theories at the summary judgment stage, as it "subjects a defendant to 'unfair surprise.'" *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019). Mullins's Complaint cites only three adverse actions based on PWDCRA discrimination: (1) his being sent for a "psychiatric" exam, ECF No. 1-2, PageID.22 ¶ 85; (2) failure to accommodate, *id.* ¶ 86; and (3) termination, *id.* And at deposition, he reiterated that his challenge was to the failure to accommodate and termination. ECF No. 27-2, PageID.619-621, Pl's Dep. 421-428.

As discussed, and as memorialized in writing, Mullins was suspended for cursing at Butcher during the February 2, 2018 meeting and for his aggressive movement towards Butcher thereafter. *See, e.g.*, ECF No. 26; PageID.205-06; *supra* at 5. Mullins's secret audio confirms this; nowhere in the audio does Butcher say that he's suspending Mullins because of a disability. *See, e.g.*, ECF No. 26; PageID.205-06. Mullins thus has no direct evidence. And, of course, Defendants were permitted to suspend Mullins for disrespectful conduct. *See, e.g., Thompson v. Olympic Stain Co.*, 841 F.2d 1127 (6th Cir. 1988) (table) ("disrespectful conduct" is legitimate and non-discriminatory reason for discipline); *Sargent v. Int'l Bhd. of Teamsters,* 713 F. Supp. 999, 1016 (E.D. Mich. 1989) (same).

Mullins nonetheless argues that he is entitled to summary judgment because his secret audio recording did not capture the cursing, and that Defendants' claims to the contrary are "an improper attempt to interject credibility determinations at the summary judgment stage." ECF No. 27, PageID.474-75 & n.1. Mullins misreads the law. A *court* cannot make credibility determinations at summary judgment, because that is the province of the jury. *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 802 (6th Cir. 2013). Yet that is what Mullins is asking for now: he wants the Court to grant summary judgment by accepting his story as true, and by discrediting Butcher's contrary claim. That is not how it works.

-14-

For one thing, a jury could believe Butcher's explanation that Mullins was suspended for cursing and aggressive conduct. Contrary to Mullins's implication, Butcher explained that Mullins swore through "a combination of lightly hitting a consonant" and "mouthing lightly" in a way that Mullins knew would not have been audible on his secret recording. ECF No. 26-7, PageID.397, 411. And, of course, even if Mullins did not curse, it does not mean that he was suspended due to disability, as opposed to some other reason. Mullins is not entitled to summary judgment of disability discrimination on the "strength" of his secret audio.

### B.    Mullins is not entitled to judgment on the termination claim.

Mullins also claims his termination was disability discrimination. Unsurprisingly, Mullins—who did not depose Watson, Dr. Ubom, or *anyone else* involved in the fitness-for-duty examination and its aftermath—fails to identify any direct evidence that a decision-maker stated that Mullins would be fired due to a disability. And to the contrary, he admits that Ford sent him a letter giving him options to return, or to open a new leave—and warning him about the policy implications of remaining AWOL. *Supra* at 7.

Rather, Mullins's argument seems to be that he did "not receive" the May letter and that there is "there is "no basis to support any argument that Plaintiff failed to comply with the letter before the decision to terminate him for doing so was made on June 4, 2018." ECF No. 27, PageID.476. It is unclear, logically, how Mullins

believes that these asserted facts would *require* someone to believe disability discrimination was the reason for the termination. Regardless, apart from his implicitly accepting that his failure to timely comply with the letter warranted termination under Ford policy, everything else Mullins says in this argument is wrong, and contradicted by Mullins's own deposition testimony. On this record, it is the Defendants who would be entitled to summary judgment.

*First*, there is no dispute about two key facts: that Ford's policy provides that employees can be terminated after being absent for a certain period without leave, and that Mullins was AWOL for far longer than he was entitled to be under policy. *See supra* at 6-7. Additionally, Ford's ongoing efforts to contact Mullins, even after the deadline passed—rather than immediately pulling the plug—raises a reasonable inference that Ford was *not* trying to terminate Mullins due to a disability.

*Second*, Mullins admitted that he received the letter at the end of May 2018 (and, indeed, *he* produced a copy in discovery). ECF No. 26-3, PageID.238-239, Pl's Dep. 99-100; 106-107; ECF No. 26-5, PageID.327 ¶ 28. Mullins testified that he brought a copy of the letter to Maria Watson at Ford on June 7, 2018; indeed, he secretly audio-recorded the conversation. ECF No. 26-3, PageID.265, Pl's Dep. 301-304; ECF No. 26-5, PageID.328, ¶ 30. It is unclear how, in good faith and consistent with his duties of candor to the Court, Mullins can claim that he never received a copy of the letter prior to meeting Watson on June 7. He received it in May.

-16-

*Third*, Mullins unambiguously failed to comply with the letter; again, he admitted at deposition that (1) Watson *gave him more time*; and (2) he nevertheless failed to open a new leave—something he'd done several times before—as he was permitted to do. *See supra* at 6-7. Mullins was not terminated until June 12, 2018, nearly a week after the Watson meeting, more than a month after Ford first mailed the letter, and more than 10 days after Mullins received the letter.[3] *Id.* Mullins, by refusing to comply with the terms of the letter and instead remaining AWOL contrary to Ford policy, effectively quit.

Further, as Ford describes in its summary judgment brief, Mullins's decision not to return despite Ford policy breaks any causal chain between the fit-for-duty exam and the termination, precluding liability for disability discrimination. *See Noe v. Dep't of Treasury*, 2019 WL 452164 (Mich. Ct. App. Feb. 5, 2019) (cited at ECF No. 26, PageID.216). Thus, not only could a jury find in Ford's favor on this issue, this Court should find that there is no material dispute of fact that Mullins was

---

[3] Mullins's own exhibits confirm this timeline. ECF No. 27-27, PageID.790 (email recounting that on June 7, Watson gave Mullins more time to comply and said that he "MAY face termination" for noncompliance); ECF No. 27-28, PageID.782 (confirming termination effective June 12, 2018). Mullins's reliance on an older, June 4, 2018 email that it would be "be fine" to terminate Mullins for not complying with the May 8, 2018 letter's deadline (ECF No. 27-29) does not change the undisputed facts that (1) Mullins had the letter in May 2018; (2) he was given more time on June 7, 2018; (3) that Mullins did not comply at any point after receiving the letter; and (4) that the termination did not occur until June 12, 2018.

terminated because he failed to return to work or open a leave, and not because of any disability discrimination.

## Conclusion

Mullins's motion for summary judgment should be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

By: /s/ *Thomas J. Davis*
    Elizabeth Hardy (P37426)
    Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

</div>

Dated:  December 28, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ *Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy Viviano
Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com

396078